**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                          Case No. 97-CR-81493-DT

ALAN MIKELL and CHRISTOPHER GRISEL,

       Defendants.

_____/

**ORDER DENYING DEFENDANT GRISEL'S MOTION FOR NEW TRIAL OR
ACQUITTAL BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL AND NEWLY
DISCOVERED EVIDENCE OF PERJURY
AND
GRANTING IN PART AND DENYING IN PART DEFENDANT MIKELL'S "MOTION
FOR RECONSIDERATION OF ORDER DENYING MIKELL'S MOTION FOR NEW
TRIAL"**

On November 15, 1999, Defendant Grisel filed a *pro se* motion titled "Motion to

Replace Counsel."  In his motion, Defendant sought to present several allegedly

prejudicial errors during his criminal trial and identified certain "areas of immediate

concern," including "[t]he Motion concerning NFO's representatives' misrepresentations

at trial" and "[t]he Motion concerning Ineffective Assistance of Counsel."  (Def.'s

11/15/99 Mot. at 2.)  After granting several motions for acquittal, the court denied as

moot Defendant Grisel's "Motion to Replace Counsel."  *United States v. Mikell*, 163 F.

Supp. 2d 720, 743 (E.D. Mich. 2001).  This November 15, 1999 motion is now before

the court following an appeal to the Sixth Circuit Court of Appeals, an October 21, 2004

hearing on remand, and a subsequent substitution of counsel.[1]

---

[1] During the October 21, 2004 hearing, recognizing that the motion had been
previously deemed moot based on the granting of motions for acquittal, the court asked

On February 22, 2005, Grisel's new counsel filed a supplemental brief in support of this motion, seeking a new trial or entry of acquittal.  The Government filed a written response on April 25, 2005 and Defendant Grisel filed a reply on May 9, 2005.  Defendant Mikell filed a notice of joinder in Defendant Grisel's motion and supplemental brief for a new trial with respect to sections I-III.  Oral argument was held on June 30, 2005.  For the reasons set forth below, the court will deny Defendant Grisel's motion.

Defendant Mikell's December 3, 2004 "Motion for Reconsideration of Order Denying Mikell's Motions for New Trial" also remains pending before the court.  After receiving the Government's written response to Mikell's motion for reconsideration, the court held a hearing, on February 11, 2005, to discuss the prospect of conducting an evidentiary hearing to determine whether Defendant Mikell's co-counsel, Steven Harris, labored under an actual conflict of issue at trial and whether such a conflict adversely impacted Mikell's representation.

During this February 11 hearing, counsel for Mikell and the Government recorded their positions on the need for an evidentiary hearing on the alleged self-interest conflict of Mikell's co-counsel.  The court, however, was also informed by Defendant Grisel's local counsel that Grisel had obtained new counsel and that a substitution was forthcoming.  Based on this representation, the court determined that it would provide

---

Grisel's counsel Mr. Douglas Mulkoff, whether in his professional opinion the November 15, 1999 *pro se* motion presented issues that needed to be addressed by the court on remand.  (Def.'s Supp. Br. Ex. A, 10/21/04 Hearing Tr.)  Mr. Mulkoff asked the court to review and rule on Grisel's motion.  (*Id.*)  The court expressed its concern and unwillingness to rule on a pending *pro se* motion when the defendant was represented by counsel.  As such, the court stated it was inclined to deny without prejudice whatever had been filed *pro se* and permit counsel "to give independent attention, and, as an officer of the Court, to advance those motions that are rationally able to be advanced." (*Id.*)  The court instructed Mr. Mulkoff to do so with reasonable diligence.

2

an opportunity for Grisel's new counsel to express a formal position on the need for an

evidentiary hearing on the alleged conflict of interest between Mr. Harris and Defendant

Mikell.  Defendant Grisel has done so in his reply in support of his motion for a new trial

based on newly discovered evidence of perjury.  Defendant Grisel, like the Government,

argues that an evidentiary hearing is required on the alleged conflict of interest.  (Def.

Grisel's 05/09/05 Reply at 8-10.)  For the reasons stated below, the court will grant in

part Defendant Mikell's motion for reconsideration and hold an evidentiary hearing.

## I. BACKGROUND

The factual and procedural background leading to the current posture of this

case is complex.  Much of it has been set forth in this court's published opinion granting

Defendants' motions to acquit after a jury verdict for improper venue and for insufficient

evidence, and in the Sixth Circuit's decision reversing the court's judgment of acquittal

as to counts 1 through 7 of the fifty-two count Second Superseding Indictment (returned

by the grand jury on May 27, 1998).  *See United States v. Mikell*, 163 F. Supp. 2d 720

(E.D. Mich. 2001); *United States v. Mikell*, 84 Fed.Appx. 485, 486, 2003 WL 22976438

(6th Cir. Dec. 1, 2003).[2]

Defendants Mikell and Grisel were the owners of Real Pinconning Cheese

("RPC") in Pinconning, Michigan.  On September 26, 1995, RPC entered into an

agreement to purchase milk from National Farmers Organization Dairy Custodial

Account ("NFO").  Because RPC already owed NFO approximately $1,000,000.00 for

previously shipped milk, NFO agreed to ship additional milk only under certain

---

[2] On the current record, Defendant Grisel stands convicted of Counts 1-6 of the
second superceding indictment, while Defendant Mikell stands convicted of Counts 1-5
and 7.

conditions: namely, a collateral pledge and security agreement whereby RPC could be held in default for failure to remain current on milk payments and whereby NFO could obtain a security interest in RPC's cheese inventory.

By January 1996, RPC owed NFO approximately $2,400,000.00 (including the previous $1,000,000.00 debt) for unpaid milk invoices.  NFO then notified Defendants that it was holding RPC in default and exercising control of the collateral, that is, approximately 771,338 pounds of cheese which was then warehoused at, and/or in transit to, Pinconning.

After receiving formal notification that they were being held in default, Defendants devised a scheme whereby they could avoid their obligations to NFO without themselves suffering financially.  First, Defendants sold the cheese to Nor-Tech Dairy Advisors, Inc. ("Nor-Tech"), which was located in South Dakota and owned by Ronald Hines.  Although the Pinconning cheese was almost entirely grade "A," and at the time worth approximately $1.35 to $1.40 per pound, Defendants sold the cheese to Nor-Tech at a mere $0.25 per pound.  A companion agreement required Hines to quickly resell the cheese back to Defendant Grisel's company, Innoquest, for $0.30 per pound plus shipping costs.  Grisel, through Innoquest, then resold the cheese to a company called Sorrento at $1.40 per pound and a second entity named E.J. Marketing for an average of $1.36 per pound.  RPC was only required to pay NFO the money from the initial sale of cheese to Nor-Tech, which was priced at $0.25 per pound and not at the then-prevailing market value.

In an effort to conceal the transaction between Hines and Innoquest, Defendant Grisel directed Sorrento and E.J. Marketing to send the majority of payments for the

4

cheese to Nor-Tech, rather than to Innoquest directly.  Hines then forwarded this money

to Innoquest, who disbursed some of the money to Defendant Mikell and others.

Defendants withheld the details of their below market sales to Nor-Tech and resale to

Innoquest from NFO, enabling them to divert more than $700,000.00 from their secured

creditor.

As a result of Defendants' actions, a grand jury charged Mikell and Grisel in a

fifty-two count Second Superceding Indictment with, *inter alia*, mail fraud, wire fraud,

money laundering, and conspiracy.  The criminal conduct chiefly at issue concerns

Mikell and Grisel's self-dealing to defraud secured creditor NFO by diverting the value

of the cheese inventory from NFO in the closing days of Defendants' cheese business.

After a lengthy trial, the jury returned guilty verdicts against Defendants on numerous

counts.

Subsequently, this court granted Defendants' motions for acquittal under Federal

Rule of Criminal Procedure 29.  *Mikell*, 163 F. Supp. 2d at 743.  The court ruled that the

Government failed to prove that the object of Defendants' scheme was money or

property with value and that the government failed to establish venue regarding some of

the verdicts.  The United States appealed only the court's decision as it related to

dismissal of counts based on insufficient evidence, not the venue rulings.  On

December 1, 2003, the Sixth Circuit reversed this court's order granting the Rule 29

motions for acquittal based on insufficient evidence and remanded the case for the

court to consider "Defendants' two unconsidered motions ask[ing] the district court to

order a new trial . . . ."  *Mikell*, 84 Fed.Appx. at 489.  This case is again before the court

5

after the United States Supreme Court denied a petition for a writ of certiorari and after the Sixth Circuit mandates were issued.

## II.  DEFENDANT GRISEL'S MOTION FOR NEW TRIAL BASED ON INEFFECTIVE ASSISTANCE AND NEWLY DISCOVERED EVIDENCE OF PERJURY

Federal Rule of Criminal Procedure 33 governs motions for a new trial.  It provides, in relevant part, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  A decision to grant or deny a motion for a new trial under Rule 33 lies within the discretion of the district court.  *See United States v. Lattner*, 385 F.3d 947, 958 (6th Cir. 2004) ("The district court's denial of a motion for new trial is reviewed under an abuse of discretion standard.") (citing *United States v. Gaitan-Acevedo,* 148 F.3d 577, 589 (6th Cir. 1998)).

"[M]otions for a new trial based on newly-discovered evidence are disfavored and should be granted with caution."  *United States v. Glover*, 21 F.3d 133, 138 (6th Cir. 1994); *see also United States v. Dupree*, 323 F.3d 480, 488 (6th Cir. 2003).  A motion for a new trial based on newly discovered evidence should be granted only where: (1) the new evidence was discovered after trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal. *United States v. Braggs*, 23 F.3d 1047, 1050 (6th Cir. 1994); *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986).

A criminal defendant bears the burden of demonstrating the need for a new trial, and such motions should be granted sparingly.  *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991).  Newly discovered evidence does not include new legal theories or

6

new interpretations of the legal significance of evidence previously presented. *United States v. Olender*, 338 F.3d 629, 635 (6th Cir. 2003).

Defendant Grisel cites two instances of alleged newly discovered perjury in support of his motion. First, Defendant identifies the alleged false testimony of NFO counsel Richard Green where Green claimed he had not advised NFO in regard to cashing the proceeds check from the sale of the cheese it received in February 1996, the event extinguishing the security interest held by NFO. Second, Defendant claims that lawyer Joseph Purtell committed perjury when he testified that NFO had not filed civil claims against Defendants mirroring the criminal prosecution, when in fact, prior to his testimony, he had filed a civil case against Defendants and was lead counsel in that matter. Defendant Grisel further cites a motion for an extension of a summons in that civil case to support his claim that Purtell was delaying service on Defendants to avoid disclosure of the civil suit.

The Government makes principally three arguments in response. First, it argues that Defendant Grisel's November 1999 "Moton to Replace Counsel" is mooted because Grisel obtained the relief requested when Mr. Melvin Houston was substituted as counsel to handle his appeal. Second, it argues that Grisel has waived his right to file the motion because he has failed to exercise "reasonable diligence" in presenting the motion to the court. The Government notes that Grisel was instructed to present his motion on remand by counsel on October 21, 2004, but the current supplemental brief was not presented to the court until March 2005. Third, the Government argues that Defendant Grisel has not meet his burden to establish the four requirements to warrant a new trial based on newly discovered evidence.

## A.  Newly Discovered Evidence

### Joseph Purtell's Testimony

The relevant testimony of Joseph Purtell was elicited on March 8, 1999 on cross

examination.  (Gov.'s Resp. at Ex. A, Trial Tr. Vol. VIII at 3-9.)  It reads as follows:

Cross Examination Continued by Mr. Harris:

> Q: Mr. Purtell, I want to take you back to a time period a little bit before the
> preparation of the lawsuit which I think occurred on January 13th, Sunday
> being January 14, 1996.  Had you been involved on behalf of your clients,
> other clients, associated with business transactions that involved the
> cheese plant or any of the predecessor entities?
> A: No, not to my knowledge.
>
> Q: At one time you were the city attorney for the city of Pinconning?
> A: No.
>
> Q: Never?
> A: Never.
>
> Q: Okay.  Can you give me an idea – although you're still legal counsel in
> the civil dispute of NFO v. Real Pinconning Cheese, correct?
> A: Correct.
>
> Q: What other lawsuits or litigation, past or present, were you an attorney
> with any of the entities associated with the cheese plant: Dore's, Paul's or
> Real Pinconning Cheese?
> A.  I personally?
>
> Q: Well your law firm.
> A.  I can't speak for the entire firm because there's nine attorneys in the
> firm.  Myself, I was an attorney in the litigation of Dore's Pinconning
> Cheese, I'm not involved in that case anymore.  Otherwise I personally
> have not been.

(*Id.*)

Notwithstanding this March 8, 1999 testimony, Defendant Grisel has presented

evidence that on January 13, 1999, Mr. Purtell filed a civil complaint in Bay City Circuit

Court on behalf of NFO and against Defendants arising from the alleged fraudulent

cheese transactions.  (Def. Grisel's Supp. Br. at Ex. B.)  The caption of this state law

civil action lists J. Joseph Purtell as attorney for Plaintiff and he signed the complaint.

(*Id.*)  Grisel also has presented evidence that Purtell filed an *ex parte* motion to issue a

second summons in this state law civil case.  (*Id.*)  In this April 13, 1999 *ex parte*

motion, Purtell averred that the Defendants were witnesses in a federal criminal trial and

that "service upon them would be difficult or potentially exempt because of their

attending or returning to court relative to proceedings."  (*Id.*)  The motion sought the

entry of an order from the state court to permit the issuance of a second summons.

(*Id.*)  The state civil case presented issues significantly similar to the issues in the

federal criminal case, and Purtell denied, under oath, the existence of this parallel civil

action that he had filed on NFO's behalf fewer than eight weeks previously.

Defendant Grisel argues that this evidence of Purtell's involvement in the civil

case was not discovered until after trial, that Defendant could not have discovered it

with reasonable diligence because Defendants were never served and Purtell filed a

motion to extend NFO's time to serve them.  Defendant also argues that knowledge of

the existence of this civil case would have been material to the jury because of the bias

the parallel state action would have demonstrated had it been exposed.

In short, the NFO witnesses' credibility would have been undermined by the

parallel state civil action filed against Defendants and such evidence was completely in

accord with a major defense theory of the case.  One of the defense theories at trial was

that NFO had driven Defendants out of business by its predatory pricing.

Defendants attempted to show the jury that NFO was using the government to

prosecute what was, in reality, a civil dispute between two private entities.  This

9

instance of alleged perjury is claimed to have significantly affected Defendant's ability not only to impeach Mr. Purtell, but also to present evidence to the jury on a key point in his defense theory, warranting a new trial.

In its written response, the Government fails to adequately address this alleged perjury associated with the 1999 civil action filed by Purtell against Defendants on behalf of NFO.  The Government argues that Defendant's characterization of the testimony is "murky, and unfaithful to the record."  (Gov't's Resp. at 4.)  It also maintains that the record and above-cited testimony reveals no mendacity on behalf of Purtell.  Lastly, the Government argues that Defendant Grisel knew, at the time of trial, Purtell had gone to the home of Bay County Circuit Judge Lawrence Bielawski seeking a temporary restraining order after learning that defendants were allegedly in the process of stealing cheese from the plant in Pinconning.  (*Id.* at 5.)

Defendant, however, clearly focuses on the 1999 civil litigation (filed by Purtell in Bay City Circuit Court before Judge Kenneth W. Schmidt) not on Purtell's involvement in seeking a restraining order from Judge Bielawski.  Second, the above-cited testimony shows that Purtell omitted any reference to the January 13, 1999 state case that he filed on behalf of his client against Defendants.  On cross examination, Purtell was asked: "What other lawsuits or litigation, *past or present*, were you an attorney with *any of the entities associated with the cheese plant*: Dore's, Paul's or Real Pinconning Cheese?" (Gov't's Resp. Ex. B. at 3-4 (emphasis added).)  He responded by indicating that he was not personally involved in any other lawsuits or litigation other than a 1996 case. He did so, however, with personal knowledge that he had filed for NFO a complaint against Defendants just weeks prior to his testimony at trial.

**Richard Green's Testimony**

The relevant testimony from Mr. Green occurred on May 14, 1999 during redirect

examination and re-cross examination.  It provides:

Direct Examination by Mr. Brunson:

Q: You're Richard A. Green?
A: Yes.

Q: You're the same Richard Green that testified earlier?
A: Yes.

Q: You're an attorney for NFO?
A: Yes.

Q: Mr. Green, did you ever recommend to NFO that they should accept
the $186,000 representing the 25 cents a pound for the Nortech sale?
A: Never.

Q: Did you ever say that to anyone?
A: Never.

Q: Did you ever say anything remotely like that to anyone?
A: Never.

Q: Did you in any way ever hint or suggest to anyone that, well, maybe
NFO ought to take 25 cents a pound for the 771,000 pounds of cheese
and be done with it?
A: Never.

Q: Did you ever suggest that in writing or in any other form to anyone
else?
A: No.

Q: Did you have contact with any attorney for Real Pinconning Cheese
other than Mr. Opperman?
A: Not that I know of.

Q: Has there ever been a circumstance where someone could have
overheard you saying that 25 cents a pound, that deal, was acceptable or
worthy of consideration as far as NFO was concerned?
A: Never.  I never even thought of it.

. . .

11

<u>Cross Examination by Mr. Gurewitz</u>:

Q: Mr. Green, I would like to see if I understand what you just said with regard to the receipt of NFO of money.  Your testimony was you never recommended to NFO that it take the $186,000?
A: No, that is not in settlement, that's why–

Q: I didn't say anything about settlement, Mr. Green, I just said – I didn't mention the word – just take that amount of money when it was tendered?
A: No, I didn't have to.  Nobody raised the question.

Q: No one ever asked you?
A.  No, they took the money and put it in their account.

Q: Did you know it wasn't even $186,000?
A: I don't know the amount exactly.

(Def. Grisel's Reply at Ex. A.)

This testimony shows that Mr. Green stated that he never advised NFO to take the $186,000.00 at issue as nobody had "raised the question."  (*Id.*)  Defendant also argues that this testimony demonstrates that, to NFO, "deciding whether to cash the check was no big deal."  (Def.'s Reply at 5.)  Defendant Grisel contrasts the trial testimony with Mr. Green's July 29, 1999 post-trial "Supplemental Declaration of Victim Losses."  (Gov't's Resp. Ex. B.)  In his post-trial declaration, Green detailed NFO's losses for purposes of restitution, declaring in relevant part:

> <u>Expenses and Costs.</u>  The Dairy Trust has also incurred expenses related to participation in the investigation and prosecution that the trustees believe should be included in the order of restitution, pursuant to 18 U.S.C. § 3663A(b)(4).  While these items could include the time of NFO employees and related costs, the claim set forth here includes only legal fees and costs for services rendered by attorneys J. Joseph Purtell and John P. McKenna and by myself, which have been documented in our bills.  Moreover, while our services could include a number of incidental matters, the claim focuses on two major matters: (a) our investigation of the facts and circumstances regarding the stunning news that the Dairy Trust was being paid only $186,670 for the cheese that we were led to believe would bring approximately $1,000,000, ending at the time we presented our findings to the federal law enforcement agents; and (b) our

12

need to respond to the efforts of defendants Mikell and Grisel, undertaken once they learned of the federal criminal investigation, to establish their ultimately-discredited legal defense in the context of the Dairy Trust's case against RPC pending in the Michigan state court.

(a) <u>Investigation</u>.  This phase, which began on or about February 20, 1996, . . .

(Gov.'s Resp. Ex. B. at 2-3.)  Green's declaration also showed that he spent 36.85 hours on this investigation.  (*Id.* at 4.)

Defendant notes that Green's declaration shows that his investigation started on February 20, 1996, the very same day that the $186,670.00 cheese check was tendered to NFO.  Defendant Grisel argues that Green's trial testimony conflicts with his declaration and that this inconsistency was critical to Grisel's defense.

Grisel's defense strategy included an argument that the decision by NFO to cash the check for the cheese was made after February 20, 1996 -- it was the cashing of the $186,670.00 cheese check that triggered the loss of NFO's security interest.  Defendant argues that Green's trial testimony was less than candid, given the discovery of his approximately forty-hour investigation commencing on the date the check was tendered. (Def.'s Reply at 5.)  Defendant Grisel argues that a new trial is warranted because the jury was denied complete and truthful testimony about the decision to cash the check. According to Grisel, "[h]ad [Green's] trial testimony been [ ] candid the jury would clearly have seen that whatever fraud NFO claimed had deluded them to that point, was washed away by the time they decided to cash the check."  (*Id.*)

Defendant Grisel also argues that this newly discovered evidence would likely result in an acquittal.  According to Grisel, Defendants stand convicted of having defrauded NFO of its security interest in the cheese, but under the principles of the

13

Uniform Commercial Code, that security interest was not lost until NFO cashed the

check. *See* 18 U.S.C. § 1343; *United States v. Mikell*, 84 Fed.Appx. 485, 2003 WL

22976438 (6th Cir. Dec. 1, 2003).[3]  The newly discovered evidence that NFO

commenced a 40-hour investigation before cashing the check goes to the heart of

whether NFO knew what it would be paid for the cheese before it gave up its security

interest, the "money or property" element of the § 1343 offenses. *See Mikell*, 84

Fed.Appx at 489 (holding that the jury could have found that NFO's security interest in

the cheese inventory had value, constituting the money or property element of the

offense).

The Government argues that the selective editing of Green's post-trial

declaration by Defendant Grisel in his brief should be ignored and that the complete

statement is consistent with Green's trial testimony.  The Government argues that

Green's testimony shows that he was understandably interested in recouping the entire

$1,000,000.00 balance and that Green did not indicate that NFO accepted the $186,000

in full final payment before contacting the authorities.  (Gov.'s Resp. at 8.)

**Defendants Cannot Establish Materiality and Likelihood of Acquittal**

Both instances of alleged "newly discovered" evidence of perjury satisfy the first

two prongs of the court's Rule 33 analysis.  The evidence of the 1999 civil litigation

which Purtell failed to disclose during his testimony was not discovered until after the

---

[3] As this court has explained, both mail and wire fraud crimes require a "scheme or artifice to defraud."  18 U.S.C. §§ 1341, 1343.  "[T]he words 'to defraud' commonly refer 'to wrongdoing one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'"  *McNally v. United States*, 483 U.S. 350, 358 (1987) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)).  *See Mikell*, 163 F. Supp. 2d at 741.

14

trial had concluded.  In addition, the uncontroverted evidence that Purtell sought and obtained an *ex parte* extension of the summons in the 1999 state court action shows that Defendants would not have likely discovered this evidence, even when exercising reasonable diligence.  Likewise, Green's post-trial victim impact affidavit was not created until after the trial and there is no indication that Defendants would have discovered that he did advise NFO about the cheese (as gleaned from the fact that he conducted an approximately 40 hour investigation) with reasonable diligence.  Nevertheless, Defendant Grisel's motion will be denied because he has not carried his burden to show that the new evidence is material and not merely impeaching or, more importantly, that the introduction of the new evidence would likely produce an acquittal if the case was retried.

During oral argument, Grisel's counsel, when pressed by the court on the third and fourth prongs of a Rule 33 "newly discovered evidence" analysis, argued that the evidence showing Green's inconsistent testimony was material because it would show the jury that NFO had knowledge of all the material facts when it cashed the $186,000.00, the event that extinguished the security interest under Article 9 of the Uniform Commercial Code.

Defendant Grisel does not challenge the sufficiency of the evidence regarding the sale of the cheese to Nor-Tech at a mere $ 0.25 per pound, a price well below market value, or the companion agreement that required Hines to quickly resell the cheese back to Defendant Grisel's company Innoquest for $.30 per pound.  Nor does he challenge the sufficiency of the evidence showing that Innoquest then resold the cheese to Sorrento and Defendants' company, RPC, requiring RPC to pay NFO only $0.25 per

pound.  Rather, Defendants argue that none of these actions or transactions involving Defendants deprived NFO of its interest in the cheese and it was NFO's own decision to cash the check that caused the loss.  Defendants maintain that a jury presented with Green's inconsistent testimony would infer that Green did advise NFO about the $186,000.00 after he was made aware of the "stunning news" that NFO would receive well below the expected $1,000,000 for the cheese.  Defendants argue that this new evidence showing that Green advised NFO requires an acquittal on the wire fraud charges because Defendants' actions did not deprive NFO of its interests in the cheese inventory.

Defendant Grisel's argument, however, suffers from a fundamental flaw: it presumes that an actual loss of the security interest caused by Defendants' actions was required for a conviction under 18 U.S.C. § 1343.  It is not.  *United States v. Daniel*, 329 F.3d 480, 486 (6th Cir. 2003) (a misrepresentation may be material without actual reliance by the intended victim).

Section 1343 provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned . . . .

18 U.S.C. § 1343.

To convict a defendant of wire fraud, the government must prove the following elements: "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property."

16

*United States v. Prince*, 214 F.3d 740, 747-48 (6th Cir. 2000) (footnote omitted).  Wire

fraud under § 1343 is a specific intent crime, requiring the government to show:

> not only that a defendant must knowingly make a material
> misrepresentation or knowingly omit a material fact, but also that the
> misrepresentation or omission must have the purpose of inducing the
> victim of the fraud to part with the property or undertake some action that
> he would not otherwise do absent the misrepresentation or omission.

*United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1988).

A defendant's intent to defraud, his actions constituting a scheme or artifice to

defraud, and his use of interstate wire communications in furtherance of the scheme are

separate and distinct from a defendant's success in obtaining or depriving the property

interest at issue.  Moreover, the Sixth Circuit has specifically held that "reliance is not an

element of mail or wire fraud."  *United States v. Merklinger*, 16 F.3d 670, 678 (6th Cir.

1994).  "[T]he mail and wire fraud statutes do not require proof that the intended victim

was actually defrauded; the actual success of a scheme to defraud is not an element of

either § 1341 or § 1343."  *Id.*  A defendant may be convicted under § 1343 if the

government establishes the specific intent required and that the action elements of the

offense were taken with a purpose to defraud.  It need not show that a defendant's

actions were successful in obtaining the money or property element.  *See id.*

The Sixth Circuit recently reiterated this position in *United States v. Daniel,*

relying on the Supreme Court's holding in *Neder v. United States*, 527 U.S. 1, 25

(1999).  The Sixth Circuit explained:

> The Supreme Court's more recent decision in *Neder, supra,* makes it even
> clearer that actual reliance is not required for mail or wire fraud.  In *Neder*
> the Court held that the mail and wire fraud statutes incorporated the
> common-law requirement of materiality.  527 U.S. at 20-25, 119 S.Ct.
> 1827.  In doing so, the Court explicitly rejected the argument that a
> materiality requirement included a reliance requirement:

17

> the Government is correct that the fraud statutes did not
> incorporate *all* the elements of common-law fraud.  The common-
> law requirements of "justifiable reliance" and "damages," for
> example, plainly have no place in the federal fraud statutes.  By
> prohibiting the "scheme to defraud," rather than the completed
> fraud, the elements of reliance and damage would clearly be
> inconsistent with the statutes Congress enacted.  But while the
> language of the fraud statutes is incompatible with these
> requirements, the Government has failed to show that this
> language is inconsistent with a materiality requirement.

527 U.S. at 24-25, 119 S.Ct. 1827 (citations omitted) (emphasis in
original).  Actual reliance is thus "plainly" not required in order for the
government to establish that a misrepresentation was material.

*Daniel*, 329 F.3d at 486-87.

Even when the court assumes that a reasonable jury would infer that NFO's

attorney, Mr. Green, was aware of the $186,000.00 check (representing only $0.25 per

pound for the sale of the cheese) and that he advised NFO on whether to cash that

check, this evidence does not undercut the significant amount of evidence introduced

on Defendants' specific intent and their actions and transactions that showed a scheme

to defraud and the materiality of those actions.  (*See, e.g.*, Gov't's Resp. at 16 & Exs. D,

E, and F.)  The newly discovered evidence does not detract from the evidence

supporting the jury's conclusion that all of the elements of § 1343 were satisfied.

Because this new evidence goes chiefly to whether *NFO* actually relied Defendant's

actions in giving up their security interest (i.e. whether Defendants' fraudulent actions

were successful), something not required to establish the elements of the offense, the

court will deny Defendant Grisel's motion based on Green's alleged perjury.[4]

---

[4] In Count 1 of the second superseding indictment, Defendants were charged
with conspiracy in violation of 18 U.S.C. § 1956(h).  They were convicted on this count
for conspiring to violate § 1956(a)(1)(B)(i) by knowing that the property involved in a

Defendants also argue that Purtell's failure to disclose a pending civil action between NFO and Defendants materially inhibited their defense and its presentation to a new jury would likely result in an acquittal.  Defendants argue that Purtell's improper failure to disclose the civil action that he filed merely eight weeks prior to his testimony, denied them an opportunity to further emphasize their theory that NFO enlisted the help and pressure of the government to prosecute Defendants in order to obtain an advantage in what was otherwise a civil dispute between private parties.  Defendants also argue that Purtell's refusal to disclose the pending civil action during his trial testimony denied the jury an opportunity to consider this evidence as motive for covering up NFO's knowledge of the material facts when it determined to cash the $186,000.00 check and extinguish its security interest in the cheese inventory.

Although the evidence relating to Purtell more strongly suggests perjury (or incorrect testimony at a minimum) than does Green's post-trial victim impact statement, the materiality prong of Defendant's Rule 33 argument is weaker.  As discussed above, whether NFO was actually duped into giving up their security interest is not sufficient to undercut the evidence supporting the wire fraud convictions.  Purtell's omission did prevent Defendants from *strengthening* their argument that NFO was unfairly seeking government intervention; however, whether NFO reported information to the United States for private economic purposes does not impact whether the jury had sufficient

---

financial transaction represented the proceeds of some form of unlawful activity and conspiring to, conducting, and attempting to conduct certain financial transactions that involved the proceeds of their unlawful activity by committing mail and wire fraud. Because the wire fraud convictions did not require actual success in defrauding NFO, the conspiracy count requiring unlawful activity is likewise not undermined by the alleged new evidence of perjury.

evidence to convict Defendants of the charged offenses.  As the court explained during

oral argument, this defense theory may be compared to a subtle form of "jury

nullification."  The court is not convinced that the additional new evidence showing

Purtell's incorrect testimony or perjury would likely produce an acquittal during a new

trial.

## B.  Ineffective Assistance of Counsel

The court will also deny Defendant Grisel's motion for a new trial based on his

allegations of ineffective assistance of counsel during trial.  The court notes that

Defendant Mikell did not join this part of Defendant Grisel's motion.

Defendant Grisel argues that he is entitled to a new trial because: (1) his trial

counsel was ineffective in cross-examination of Richard Green; (2) his trial counsel

failed to call sur-rebuttal witnesses to expose Green's perjury; (3) his trial counsel was

ineffective in cross-examination of witness Michael Hines; and (4) his trial counsel was

ineffective in his direct examination of witnesses.

The first prong of the analysis of Rule 33 motion for a new trial based on newly

discovered evidence requires that the defendant show that the evidence relied on was

not known by the defendant at the time of trial.  *United States v. D.G. Seago*, 930 F.2d

482, 488 (6th Cir. 1991).  A majority of the circuit courts of appeals, including the Sixth

Circuit, have take the view that "an ineffective assistance of counsel claim cannot be

considered newly discovered evidence for the purpose of a motion for new trial because

the facts that give rise to the claim are necessarily known to the defendant at the time of

the trial."  *Id.*  "[E]vidence of ineffective assistance of counsel is not newly discovered

evidence for purposes of a motion for new trial where the facts supporting the claim

20

were within the defendant's knowledge at the time of trial." *Id.* at 489; *see also United States v. Wade*, No. 03-3974, 93 Fed.Appx. 789, 790, 2004 WL 603914 (6th Cir. Mar. 23, 2004).

Here, the court need not consider Defendant's ineffective assistance claims under Rule 33 because the facts giving rise to Grisel's allegations were known at the time of trial. The "tactical" deficiencies in trial counsel's performance cited by Defendant Grisel do not constitute newly discovered evidence for purposes of his motion for a new trial. *See D.G. Seago*, 930 F.2d at 489.

Because the court is not convinced that the newly discovered evidence identified by Defendants would likely produce an acquittal if this case were retried, and that Defendant Grisel's ineffective assistance claims do not present "newly discovered" evidence under Rule 33, the court declines to grant Defendant Grisel's motion for a new trial.

## II.  DEFENDANT MIKELL'S MOTION FOR RECONSIDERATION

As explained above, Defendant Grisel has also briefed his position regarding the need for an evidentiary hearing on Defendant Mikell's allegation that his co-counsel at trial labored under an actual "self interest" conflict of interest and that this conflict adversely affected the representation in violation of the Sixth Amendment. Defendant Grisel suggests that an evidentiary hearing should be held. For the reasons stated below, and notwithstanding Defendant Mikell's arguments recorded during the February 11, 2005 hearing and in prior briefing, the court will conduct such a hearing.

Defendant Mikell, in a complete turn-around on the issue of an evidentiary hearing (*see* 11/18/04 Order at 4), now argues that, under governing law, no evidentiary

21

hearing should be held and the court's failure to inquire about the alleged conflict with Mr. Harris once raised during trial mandates reversal as a matter of law.  *See Moss v. United States*, 323 F.3d 445, 455 (6th Cir. 2003) (citing *Holloway v. Arkansas* and stating: "Indeed, where the defendant or his counsel objects to the conflict prior to, or during trial, the trial court must inquire as to the extent of the conflict or subject any subsequent conviction to automatic reversal.); *cf Mickens v. Taylor*, 535 U.S. 162, 168 (2002) (*Holloway* [*v. Arkansas*, 435 U.S. 475 (1978)] creates an automatic reversal rule *only* where defense counsel *is forced to represent codefendants over his timely objection*, unless the trial court has determined that there is no conflict.") (emphasis added).

The court is not convinced that Defendant Mikell is automatically entitled to a new trial in this case based on the court's failure to consider or probe the alleged conflict of interest in 1999, and it will order an evidentiary hearing.  This is not a case where the court *forced* counsel with an alleged conflict to continue representing a party. *See Mickens* 535 U.S. at168 (*Holloway* [*v. Arkansas*, 435 U.S. 475 (1978)] creates an automatic reversal rule *only* where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict.").  In this case, the court *permitted* the withdraw of the attorney allegedly conflicted once this issue was presented to the court and did not *force* continued representation, making it similar to those cases where courts have neglected a duty to inquiry about a conflict.  *See id.* at n. 3; *Wood v. Georgia*, 450 U.S. 261 (1981) (remanding for lower court inquiry).

Defendant Mikell argues that the court's failure to conduct an inquiry into the

potential self-interest conflict of his co-counsel at trial, triggers the automatic reversal rule presuming prejudice.  In essence, Mikell points to the court's failure to inquire as the reason to presume prejudice.  As the Sixth Circuit has explained, however, in *Mickens*, the Supreme Court "rejected the approach of several circuits which determined that a trial court's failure to inquire into a conflict of interest compels automatic reversal of the conviction."  *Moss*, 323 F.3d at 471.  The Court "held that the trial court's failure to inquire into a potential conflict of interest on the part of the defendant's attorney, about which *the court knew* or reasonably should have known, does not automatically require reversal of the conviction."  *Id.* (emphasis added).  The *Mickens* Court explained:

> [A] proposed rule of automatic reversal when there existed a conflict that did not affect counsel's performance, but the trial judge failed to make the *Sullivan* mandated inquiry, makes little policy sense . . . .  The trial court's awareness of a potential conflict neither renders it more likely that counsel's performance was significantly affected nor in any way renders the verdict unreliable.  Nor does the trial judge's failure to make the *Sullivan* mandated inquiry often make it harder for reviewing courts to determine conflict and effect, particularly since those courts may rely on evidence and testimony whose importance only becomes established at trial.

*Mickens*, 535 U.S. at 172-73.  As Supreme Court Justice Anthony Kennedy noted in his concurring opinion, "[t]he constitutional question must turn on whether trial counsel had a conflict of interest that hampered the representation, *not* on whether the trial judge should have been more assiduous in taking prophylactic measures."  *Id.* at 179 (Kennedy, J., Concurring) (emphasis added).  Inquiring about the conflict at this stage of the proceedings will avoid any such neglect by the court and will afford Defendants an opportunity to establish whether an actual conflict existed and whether it adversely impacted their trial.

Conducting an evidentiary hearing regarding the alleged conflict at this stage cuts against Mikell's argument that the court failed to inquire about an actual conflict. While the court did not originally pass on the motions for mistrial based on this alleged conflict in 1999, it granted Defendants' motions for acquittal, thus, in the court's prior view, obviating the need to do so.  Had the court denied Defendants' motions for acquittal, the court could have examined the pending motions for mistrial and, under existing law, conducted an inquiry into the alleged conflict and its impact on the representation of Defendant Mikell.  Accordingly, the court will grant in part Defendant Mikell's motion for reconsideration.  The motion is granted inasmuch as the court will hold an evidentiary hearing and render a determination of whether to vacate its November 18, 2004 "Order Denying Defendants' Motion for New Trial."

### III.  CONCLUSION

IT IS ORDERED that Defendant Grisel's motion for a new trial based on newly discovered evidence of perjury and ineffective assistance of counsel [Dkt. # 401] is DENIED.

IT IS FURTHER ORDERED that Defendant Mikell's "Motion for Reconsideration of Order Denying Mikell's Motions for New Trial" [Dkt. # 391] is GRANTED IN PART.

The court will conduct an evidentiary hearing on the alleged conflict of interest on **August 17, 2005 at 10:00 am.**


 S/Robert H. Cleland                                   
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  July 12, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 12, 2005, by electronic and/or ordinary mail.

                      S/Lisa G. Teets
                      Case Manager and Deputy Clerk
                      (313) 234-5522

S:\Cleland\JUDGE'S DESK\Even Clerk's Orders\97.81493.Mikell.Grisel.Order.on.Motion.for.New.Trial.Newly.Discovered.Evidence.Setting.Evidentiary.Hearing.wpd

25